# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CONNIE REYES and DANIEL V. REYES, as parents of S.R., a minor child, <br> Plaintiffs, <br><br> v. <br><br> WILLIAM J. RUCKER, DDS, <br> Defendant, | CAUSE NO.: 2:13-CV-133-PRC |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 52], filed by Defendant Willie J. Rucker, DDS (incorrectly identified as William J. Rucker, DDS) on October 31, 2014. For the reasons set forth below, the Court grants the Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

On April 19, 2013, Plaintiffs Connie Reyes and Daniel Reyes, as parents of S.R., a minor child, filed a Complaint against Defendant Willie J. Rucker, DDS, alleging that Dr. Rucker was negligent in the dental care and treatment of S.R. Specifically, Plaintiffs allege that Dr. Rucker's treatment and care of S.R. fell below the applicable standard of care because of his failure to recognize and diagnose S.R.'s submandibular abscess, his failure to immediately treat S.R.'s submandibular abscess, and his failure to immediately refer S.R. to an oral surgeon to get proper treatment for a submandibular abscess. They allege that, as a direct and proximate result of Dr. Rucker's negligence, S.R. endured pain and suffering and permanent scarring to her face.

Dr. Rucker filed an Answer on July 8, 2013. Plaintiffs filed an Amended Complaint on October 1, 2013, to which Dr. Rucker filed an Answer on October 8, 2013.

On August 1, 2013, the Court set a deadline of March 30, 2014, for Plaintiffs' expert witness disclosures and reports and set a discovery deadline of July 30, 2014. On March 28, 2014, the Court

granted an extension of the deadline for Plaintiffs' expert witness disclosures and reports to May 28, 2014, and of the discovery deadline to August 29, 2014. On May 28, 2014, Plaintiffs delivered to Dr. Rucker the report of their dental expert, Nicholas Panomitros, DDS, MA, JD, LLM. Discovery closed on August 29, 2014. On September 18, 2014, twenty days after discovery closed, Plaintiffs faxed an Addendum to Expert Report signed by Dr. Panomitros on September 17, 2014. On September 23, 2014, Dr. Rucker filed a Motion to Strike Plaintiffs' Addendum to Expert Report, which the Court granted on October 2, 2014, striking the September 17, 2014 Addendum as untimely and not harmless.

On October 31, 2014, Dr. Rucker filed the instant Motion for Summary Judgment as well as a Defendant's Motion to Exclude. Plaintiffs filed a response to the Motion for Summary Judgment on November 26, 2014, and Dr. Rucker filed a reply and a supplemental designation of evidence on December 9, 2014. Plaintiffs did not respond to the Motion to Exclude.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is

2

mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e)

provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

**MATERIAL FACTS**

**A. Dental Treatment**

This case arises out of dental care Defendant Willie J. Rucker, DDS provided to S.R., a minor, at United Dental Centers on April 25, 2011. Dr. Rucker was an independent contractor dentist for United Dental Centers.

On April 25, 2011, accompanied by her mother, S.R. presented to the offices of United Dental Centers in Merrillville, Indiana, complaining of molar pain. Dr. Rucker examined S.R., and

4

a periapical x-ray was taken of tooth #18, which is in the lower left jaw, because S.R. had a broken tooth. The periapical x-ray demonstrated a cavity in tooth #18 that went into the nerve. Dr. Rucker determined that tooth #18 was nonrestorable and could not be saved because, once the decay was removed, there would not be enough tooth above the gum to hold a filling. Dr. Rucker recommended that tooth #18 be extracted. Plaintiff Connie Reyes signed an Oral Surgery and Dental Extractions Informed Consent Form. Connie Reyes and S.R. state in their Affidavits offered in opposition to summary judgment that Dr. Rucker did not tell them of any other treatment options.

That same day, Dr. Rucker extracted tooth #18 using forceps. Dr. Rucker did not document the possibility of infection in his treatment notes. When asked at his deposition whether he made a decision as to whether the area around Tooth 18 was infected or not, Dr. Rucker testified that "there was the possibility of some infection, not exact." (Pl. Resp., Ex. 6, p. 34, l. 6). Later that day, S.R. fainted at home, and the family called for an ambulance.

The following day, April 26, 2011, S.R. sought emergency care at the Porter Portage Hospital, on the advice of Dr. Rucker, because of "extreme pain," redness, and swelling to S.R.'s face. (Compl. ¶ 5).

On April 28, 2011, S.R. returned to United Dental Center, and was seen by Dr. Ryan, another dentist at United Dental Center. Dr. Ryan noted facial swelling on the outside of and under the jaw. Dr. Ryan ordered Keflex and Tylenol #3 and directed S.R. to call if she was not improving or if she worsened.

The following day, April 29, 2011, S.R. returned to United Dental Center and was seen by Dr. Rucker. Dr. Rucker noted that the swelling had gotten worse since the previous day. Dr. Rucker ordered an antibiotic shot and referred S.R. to her family physician to receive administration of the

5

shot. Dr. Rucker requested that S.R. return to his office the following Monday, May 2, 2011, to evaluate the swelling and advised that, if the swelling increased, to go to the emergency room.

On Sunday, May 1, 2011, S.R. presented to the emergency department at Community Hospital. A CT scan was taken, and surgery to drain the infection was performed. Following the surgery, S.R. remained in the hospital for a day or two, and she recovered.

### B. Plaintiff's Expert–Dr. Panomitros

On May 28, 2014, Plaintiffs disclosed dental expert Nicholas Panomitros, DDS and provided a copy of his expert report to Dr. Rucker. In his report, Dr. Panomitros opines that Dr. Rucker breached the standard of care.

Dr. Panomitros opines that the x-ray taken on April 25, 2011, shows tooth #18, the lower left second molar, with moderate-extensive decay on the occlusal aspect of the tooth. He opines that "tooth #18 could have been restored by first removing all the decay, evaluating, then performing root canal therapy, and finally a restoration, either onlay or crown." (Def. Br., Ex. 6, p. 2). Dr. Panomitros disagrees with Dr. Rucker's statement that tooth #18 was not restorable due to "not enough tooth there to put a filling." *Id*.

Dr. Panomitros opines that Dr. Rucker breached the standard of care by not giving S.R. an explanation of all available options and their risks and benefits. He opines that Dr. Rucker never diagnosed or documented within the standard of dental/medical care. Dr. Panomitros further opines that a panoramic radiograph in this case would have shown all of the alveolar bone area around tooth #18 and would have disclosed any radiographically visible pathology and infection that may have existed around the alveolar bone area of tooth #18, whether caused by tooth #18 or not. He opines that, "[b]ecause we lack such information it is undeterminable what exactly caused this traumatic episode, because we cannot see any of the surrounding alveolar bone areas." *Id*. at p. 4.

6

Dr. Panomitros indicates his understanding that Dr. Rucker never conducted an intra and extra oral examination of S.R. and, therefore, opines that Dr. Rucker's examination was incomplete. He opines that Dr. Rucker should have checked for abnormal anatomy, symmetries, tenderness, pain, and swelling of the lymph nodes and that Dr. Rucker should have taken vital signs prior to the extraction. Dr. Panomitros opines that the taking of vital signs "might have helped in diagnosis, because certainly an elevated temperature could mean that any infection might be very serious, and that perhaps something bodily elsewhere is what caused this patient to be weak/compromised on 04.25.11." *Id*. at p. 5. Dr. Panomitros opines that "Dr. Rucker should have suspected a more serious infection had he worked up the case, and he should have pre-medicated [S.R.] with an antibiotic." *Id*.

Dr. Panomitros commented that it was his understanding that S.R. passed out or became faint on two occasions–once on the evening of the extraction and once again before having surgery at Community Hospital.

Dr. Panomitros opines that S.R. did not receive appropriate post-operative instructions from anyone at Dr. Rucker's office and, thus, Dr. Rucker breached the standard of care.

Dr. Panomitros opines that S.R. "should not have had the extraction without an accurate systems assessment and diagnosis, and that she fainted probably due to being weak with a fever or severe infection of the lower left mandible." *Id*. at p. 6.

Dr. Panomitros opines that Dr. Rucker's poor and inadequate documentation did not allow Dr. Ryan to best help treat S.R.

In the concluding paragraph of the report, Dr. Panomitros opines that Dr. Rucker "performed dental procedures which were not within the proper dental and medical standard of care. He never followed the procedure of accurate diagnosis, notating, and never discussed with [S.R's] guardian

7

the details since he did not understand himself. The post-operative treatment was inadequate and really shows that Dr. Rucker does not provide care as would a reasonable and prudent dental surgeon." *Id*. at 9. Finally, Dr. Panomitros opined that "informed consent never took place in this matter." *Id*.

At his deposition, Dr. Panomitros described his report as "talking about [the] standard of care being below what it should be with reference to the malpractice that was committed." (Def. Br., Ex. 7, p. 249, ll. 10-12). Dr. Panomitros was asked where in his report he opined about the injuries that S.R. incurred. He responded, "Based on what I just read to you right now, that [my report] was written with the complaint that was filed." *Id*. at p. 251, ll. 9-11. Dr. Panomitros was referencing his opinion on page 4 of his report that "because we lack such information, it is undeterminable what exactly caused this traumatic episode because we cannot see any of the surrounding alveolar bone areas." *Id*. He testified that "the reference to all the comments are to the injuries." *Id*. at ll. 5-6.

Dr. Panomitros was asked to designate where in his report he opined that Dr. Rucker's care caused S.R.'s injuries. Dr. Panomitros again testified that his expert report was written in the context of the Complaint, which itself contained a statement of causation:

> I wrote this report with reference to the complaint that was filed and failure to recognize and diagnose SR's submandibular abscess, failure to immediately treat SR's submandibular abscess, the third one, failure to immediately refer SR to an oral surgeon to get proper treatment for a submandibular abscess. And then the next line is that as a direct and proximate result of the negligence of the defendant, William Rucker, SR endured unbearable pain and suffering and permanent scarring of the face.

*Id*. at p. 249, ll. 22-25; p. 250, ll.1-7. He further explained, "My report was written with the complaint in mind. I was not writing this report out of this – out of the sky, and so everything that I'm writing there is in reference to this." *Id*. at p. 250, ll. 17-20.

8

When asked again where in his report he provided an opinion on causation, Dr. Panomitros responded, "You're asking for explicit language, and this is [a] doctor's report and this is–any doctor that would read this would have that understanding in mind." *Id*. at p. 251, ll. 22-25; *see also id*. at p. 254, ll. 14-16. He testified that "when a doctor will read this whole report, that they will have an understanding that what I am talking about here is what caused the injuries, the whole report. The whole essence of the report is explanatory as to the[sic] Dr. Rucker's failure to diagnosis[sic] and extract a tooth that perhaps did not need to be extracted causing this patient to go in the hospital." *Id*. at p. 252, ll. 20-25; p. 253, ll. 1-2. Dr. Panomitros testified that his opinion on causation is "understood." *Id*. at p. 253, l. 3. Similarly, he explained,

> This report is not a random report. It specifically talks about the teeth and what transpired with reference to the harm that was caused. I understand what you're trying to do to convince the Judge that I'm not using proximate cause, but I think when doctors write–this is pretty good because this writing here is more explicit than Dr. Rucker's record that he wrote pertaining to the patient's procedure of the day. . . . And this in its entirety is explicit because it conveys the message that all the things that were done wrong caused harm to a child. It's not talking about my car. It's not talk[sic] about your mouths. It's talk[sic] about SR and the damage that was created.

*Id*. at p. 254, ll. 21-25; p. 255, ll. 1-4, 13-18. Finally, Dr. Panomitros testified as to his opinion on causation: "The explanation is in my report, and I believe it's understandable by another doctor reading this." *Id*. at p. 256, ll. 13-15.

### C. Dr. Rucker's Expert–Dr. Ray

On June 30, 2014, Defendant disclosed expert Barry W. Ray, DDS, MAGD and produced Dr. Ray's report. Therein, Dr. Ray opined that Dr. Rucker's care of S.R. met the standard of care and "did not cause the damages about which the [S.R.] complains." (Def. Br., Ex. 8, p. 1).

9

## D. Plaintiffs' Statement of Genuine Disputes

In their Statement of Genuine Disputes, Plaintiffs assert that the following four facts are in dispute. Dr. Rucker did not diagnose that S.R.'s tooth was infected. Dr. Rucker did not advise S.R. or her mother of treatment alternatives other than extraction. S.R.'s pain and swelling got worse over a period of six days beginning on the date of the extraction. As a result of Dr. Rucker's care, S.R. endured pain, suffering, and permanent scarring.

## ANALYSIS

Defendant Willie J. Rucker, DDS seeks summary judgment in his favor on Plaintiffs' Complaint solely on the basis that Plaintiffs have failed to produce the requisite expert testimony on the element of causation. Plaintiffs Connie Reyes and Daniel V. Reyes, as Parents of S.R., a minor child, respond that Dr. Panomitros' report is sufficient to raise a genuine issue of material fact for trial.

To prevail on a claim for medical malpractice, a plaintiff must establish (1) a duty owed to the patient by the doctor, (2) a breach of the duty by the doctor allowing his conduct to fall below the applicable standard of care, and (3) an injury to the patient proximately caused by the doctor's breach of duty. *Bader v. Johnson*, 732 N.E.2d 1212, 1216-17 (Ind. 2000); *see also Musser v. Gentiva Health Servs.*, 356 F.3d 751, 760 (7th Cir. 2004); *Bunger v. Brooks*, 12 N.E.3d 275, 281 (Ind. Ct. App. 2014) (citing *Hamilton v. Ashton*, 846 N.E.2d 309, 315 (Ind. Ct. App. 2006), *trans. denied*).[1] "To determine whether an act is a proximate cause of another's injury under the traditional standard of causation, we consider whether the injury was a natural and probable consequence of the

---

[1] This case was not submitted to a medical review panel because Dr. Rucker is not a "qualified provider" under the Medical Malpractice Act. *See* Ind. Code § 34-18-2-24.5; *see also* (Pl. Resp. 20); (Def. Reply 4). "If a health care provider is not "qualified" under the act, the provider is subject to liability without regard to the provisions of the act and the patient's remedy is not affected by the act." *Carey v. Indiana Physical Therapy, Inc.*, 926 N.E.2d 1126, 1128 (Ind. Ct. App. 2010) (citing Ind. Code § 34-18-3-1).

negligent act, which, in the light of the attending circumstances, could have been reasonably foreseen or anticipated." *Carey v. Indiana Physical Therapy, Inc.*, 926 N.E.2d 1126, 1128 (Ind. Ct. App. 2010) (citing *Dughaish ex rel. Dughaish v. Cobb*, 729 N.E.2d 159,1 64 (Ind. Ct. App. 2000), *trans. denied* 753 N.E.2d 2 (Ind. 2001)). At a minimum, proximate cause requires that the harm would not have occurred but for the defendant's conduct. *Id.* (citing *Hamilton v. Ashton*, 846 N.E.2d 309, 316 (Ind. Ct. App. 2006), *clarified on reh'g on other grounds* 850 N.E.2d 466, *trans. denied* 860 N.E.2d 592 (Ind. 2006)).

"When the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary." *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994); *see also Lane v. Walgreen Co.*, No. 1:12-CV-118, 2014 WL 2881543, at *8 (S.D. Ind. June 24, 2014) ("[E]xpert testimony is generally required to create a material issue of fact where a plaintiff's claims raise questions of medical causation beyond the understanding of lay jurors and [are] 'necessarily dependent on the testimony of physicians and surgeons learned in such matters.'" (quoting *Brown v. Terre Haute Reg'l Hosp.*, 537 N.E.2d 54, 61 (Ind. Ct. App. 1989))); *Estate of Rice v. Corr. Med. Servs.*, No. 3:09-CV-319, 2013 WL 6045897, at *3 (N.D. Ind. Nov. 12, 2013) ("Indiana law generally requires expert testimony as proof of causation in medical malpractice cases." (citing *Clarian Health Partners, Inc. v. Wagler*, 925 N.E.2d 388, 392 (Ind. Ct. App. 2010))); *Martinez v. Park*, 959 N.E.2d 259, 268 (Ind. Ct. App. 2011) ("It is well settled that in a medical negligence claim, the plaintiff must prove by expert testimony not only that the defendant was negligent, but also that the defendant's negligence proximately caused the plaintiff's injury." (citing *Schaffer v. Roberts*, 650 N.E.2d 341, 342 (Ind. Ct. App. 1995))); *Singh v. Lyday*, 889 N.E.2d 342, 357 (Ind. Ct. App. 2008); *Topp v. Leffers*, 838 N.E.2d 1027, 1033 (Ind. Ct. App. 2005). This requirement has been found to be substantive, rather than procedural, and, thus, applies in this

diversity suit. *Estate of Rice*, 2013 WL 6045897, at *3 (citing *Wallace v. McGlothan*, 606 F.3d 410, 419 (7th Cir. 2010)).

More specifically, Indiana courts have found that expert medical testimony is necessary "when the question involves the delicate inter-relationship between a particular medical procedure and the causative effect of that procedure upon a given patient's structure, endurance, biological makeup, and pathology. The sophisticated subtleties of the latter question are not susceptible to resolution by resort to mere common knowledge." *Malooley v. McIntyre*, 597 N.E.2d 314, 319 (Ind. Ct. App. 1992).

In this case, whether Dr. Rucker's alleged breach of the standard of care by failing to diagnose an infection caused S.R.'s damages is not within the understanding of a lay person. Expert testimony is required because the issue of medical causation from the treatment and extraction of a tooth with decay into the nerve that allegedly resulted in the development of a submandibular abscess is not within the common knowledge of a lay person. The same is true for the diagnosis, treatment, and specialty referral for the condition of submandibular abscess following extraction of a tooth. Notably, Plaintiffs do not dispute that expert testimony on causation is required in this case.

In their Amended Complaint, Plaintiffs allege that Dr. Rucker's care and treatment of S.R. fell below the applicable standard of care and that, as a result, S.R. endured pain and suffering as well as permanent scarring. In their response brief, Plaintiffs clarify that they are alleging that Dr. Rucker's failure to diagnose and treat the infection and his failure to provide informed consent proximately caused S.R.'s injuries. Plaintiffs are not alleging that Dr. Rucker caused S.R.'s infection but rather that his failure to diagnose the infection, his failure to consider alternative treatments given the existence of the infection, and his failure to advise Plaintiffs of alternatives to extraction

fell below the standard of care and caused S.R.'s damages. Plaintiffs list S.R.'s damages as extreme pain, prolonged suffering, prolonged infection, enduring a surgical procedure, and scarring.

In support of their claims, Plaintiffs submit the original report of Nicholas Panomitros, DDS, which was timely served on Defendants. Therein, Dr. Panomitros expresses opinions regarding the applicable standard of care and Dr. Rucker's failure to meet that standard of care with regard to his treatment of S.R. in late April 2011. Federal Rule of Civil Procedure 26(b)(2)(B) requires that a testifying expert's report contain "a complete statement of all the opinions the witness will express and the basis and reasons for them . . . ." Fed. R. Civ. P. 26(b)(2)(B). However, Dr. Panomitros' written report does not include an express opinion on causation. Rather, Dr. Panomitros opines that, because no panoramic x-ray was taken that would have shown the alveolar bone area around tooth #18, "it is undeterminable what exactly caused this traumatic episode." (Def. Br., Ex. 6, p. 4).

At his deposition, Dr. Panomitros was asked approximately ten times to identify where in his written report he opined that Dr. Rucker's care and treatment of S.R. caused her injuries, and Dr. Panomitros was unable to identify any such opinion.[2] Instead, Dr. Panomitros testified that his explanation of how Dr. Rucker's care caused S.R.'s injuries "is in my report, and I believe it's understandable by another doctor reading this." (Def. Br., Ex. 7, p. 256, ll. 10-15). Dr. Panomitros repeatedly explained that his report in its entirety and in the context of the Complaint "makes it understandable that what I'm writing about talks about inadequate treatment causing harm to this patient." *Id*. at p. 254, ll. 1-4. When asked, "And where do I find your opinion that the inadequate

---

[2] The questions on causation are found at the following pages of Dr. Panomitros' deposition, attached as Exhibit 7 to Dr. Rucker's Motion for Summary Judgment: p. 249, ll. 19-21; p. 250, ll. 21-24; p. 252, ll. 17-19; p. 253, ll. 4-5, 11-12, 22-25; p. 254, ll. 5-6, 9-10, 17-20; and p. 255, ll. 22-23/p. 256, ll. 10-12.

13

treatment caused harm to the patient?" Dr. Panomitros answered, "In the whole report and with reference to what it's being written for." *Id*. at p. 254, ll. 5-8.

In their response brief, Plaintiffs focus on Dr. Panomitros' professional qualifications as well as his opinion that aspects of Dr. Rucker's care fell below the applicable standard of care, including the failure to conduct a full examination of S.R., the failure to make a diagnosis, the failure to note a diagnosis in the records, the failure to take a panoramic x-ray, the failure to determine that the tooth was restorable, the failure to make a prognosis, and the failure to advise of all treatment options with their risks and benefits. Plaintiffs also note Dr. Panomitros' opinion that S.R. should have been medicated first for the infection and later possibly have a root canal rather than an extraction.

Notably, Plaintiffs do not argue that either Dr. Panomitros' references to his written opinion as a whole or that Dr. Panomitros' written opinion made in the context of the allegations in Plaintiffs' Complaint is sufficient to constitute an expert causation opinion. Rather, Plaintiffs point solely to Dr. Panomitros' opinion "that [S.R.] should not have had the extraction without the accurate systems assessment and diagnosis, and that she fainted probably due to being weak with a fever or severe infection of the lower left mandible." (Pl. Resp. 4) (citing Pl. Resp., Ex. 3, p. 6).[3] Plaintiffs contend that "[t]his statement sums up his opinions." *Id*.

First, this opinion regarding the cause of S.R.'s fainting is nothing more than speculation and conjecture. Dr. Panomitros does not opine that S.R. had a fever the day of the extraction or that she had a severe infection on the day of the extraction; he opines only that she might have. This opinion,

---

[3] Dr. Rucker's Motion to Exclude seeks exclusion of Dr. Panomitros on the issue of medical causation of fainting and weakness, arguing that he is not qualified to render such opinions. Plaintiffs did not respond to the Motion to Exclude. However, because the Court is granting summary judgment in favor of Dr. Rucker, the Motion to Exclude is moot.

14

standing alone and unsupported by other evidence is insufficient. *See Lane*, 2014 WL 2881543, at *8 ("Although Indiana law does not require experts to state their opinions to a particular degree of certainty, 'testimony as to mere possibilities will not alone suffice to place a fact in issue.'" (citing *Noblesville Casting Div. of TRW v. Prince*, 438 N.E.2d 722, 731 (Ind. 1982); quoting *Watson v. Med. Emergency Servs. Corp.*, 532 N.E.2d 1191, 1195 (Ind. Ct. App. 1989))); *see also Topp*, 838 N.E.2d at 1033-34 ("[E]xpert medical opinion couched in terms less than that of a reasonable degree of medical certainty; such as 'possible,' 'probable,' or 'reasonably certain,' are admissible and do have probative value. However, such medical testimony standing alone, unsupported by other evidence, is not sufficient to support a verdict . . . ." (quoting *Colaw v. Nicholson*, 450 N.E.2d 1023, 1030 (Ind. Ct. App. 1983))).

Second, this statement about fainting is not an opinion that Dr. Rucker's care and treatment caused S.R. to develop a submandibular abscess nor is it an opinion that Dr. Rucker's care and treatment caused S.R. to require surgical drainage of the submandibular abscess, leaving her with a scar. In other words, this opinion about the probable cause of S.R. fainting is not an opinion about the damages alleged by Plaintiffs. Third, of all the times that Dr. Panomitros was asked during his deposition to identify where in his written report he opined on causation, not once did Dr. Panomitros identify this opinion regarding fainting; rather, as discussed above, he responded only that his overall opinion would be understood by a medical professional to be opining on causation. Finally, Plaintiffs do not address Dr. Panomitros' statement in his report that "it is undeterminable what exactly caused this traumatic episode." *See Malooley*, 597 N.E.2d at 316, 318 (finding that the opinion of a member of the medical review panel that he was unable to determine whether causation existed "is not evidence which tends to support the Estate's allegation that there was a causative nexus between conduct and death").

In contrast, Dr. Rucker has presented admissible expert evidence that his care of S.R. did not cause S.R. harm. In his written report, Barry W. Ray, DDS, MAGD opined that Dr. Rucker's care of S.R. met the standard of care and "did not cause the damages about which [S.R.] complains." (Def. Br., Ex. 8, p. 1). Dr. Ray's opinion went on to address each of Dr. Panomitros' opinions. Plaintiffs have failed to meet their burden on summary judgment of creating a genuine issue of material fact as to causation because they have not presented expert testimony on the issue that "there was a causative nexus between" Dr. Rucker's conduct and S.R.'s injuries.

In their response brief, Plaintiffs attempt to survive summary judgment based on Dr. Panomitros' opinion that there was a failure of informed consent. Plaintiffs argue that Dr. Rucker should have provided Plaintiffs with treatment alternatives and that the failure to do so led to S.R.'s pain, suffering, surgery, and scarring. However, Plaintiffs' claim based on a lack of informed consent fails for the same reason their negligence claim fails—the absence of an expert opinion on causation. "Under the doctrine of informed consent, expert opinion is generally necessary to establish the causal connection between the inadequate disclosure and the resulting damages." *Bunger*, 12 N.E.3d at 281 (citing *Bunch v. Tiwari*, 711 N.E.2d 844, 850 (Ind. Ct. App. 1999)); *see also Lahr v. United States*, No. 1:09-CV-106, 2010 WL 4386547, at *6 (S.D. Ind. Oct. 28, 2010); *Boston v. Gyn, Ltd.*, 785 N.E.2d 1187, 1192 (Ind. Ct. App. 2003) ("[I]n the context of informed consent, there must be a causal relationship between the physician's failure to inform and the injury to the plaintiff." (citing *Bowman v. Beghin*, 713 N.E.2d 913, 917 (Ind. Ct. App. 1999))).

In support, Plaintiffs offer the Affidavits of S.R. and Connie Reyes. S.R. avers that, "[i]f Dr. Rucker had told us that I could take antibiotics for a few days before the extraction or a root canal I would have chosen to have the root canal." *See* (Pl. Resp. Ex. C, ¶ 11). Connie Reyes avers that, "If Dr. Rucker had explained the risk[] and benefits of the extraction and given us other treatment

16

options I would have chosen to keep S.R.'s tooth. I would have chosen to medicate with antibiotics first and then have S.R. submit to a root canal procedure." *Id*. (Ex. D, ¶ 9). Connie Reyes also avers, "I did not get the information which would have provided me with facts to avoid S.R.'s pain, suffering, surgery and scarring. If Dr. Rucker had told me that S.R. could take antibiotics for a few days before the extraction or a root canal I would have chosen the root canal for S.R." *Id*. at ¶ 10. Although Plaintiffs explain in their response brief why *they* believe S.R. would not have suffered any injury had they been given treatment options, they offer no expert opinion that the alleged failure of Dr. Rucker to provide Plaintiffs with alternatives caused S.R.'s injuries. Again, Dr. Panomitros' written report does not contain any opinion that Dr. Rucker's care caused any of the damages alleged by Plaintiffs in the Complaint or that a lack of informed consent caused the harm Plaintiffs claim.[4]

As a final matter, the Court turns to two remaining contentions in the Statement of Genuine Disputes. In paragraph 1 of the Statement of Genuine Disputes, Plaintiffs assert that Dr. Rucker "did not diagnose that S.R.'s *tooth* was infected." (Pl. Resp. 1) (emphasis added). However, Plaintiffs offer no evidence in support of this contention. Rather, Plaintiffs focus on arguing that Dr. Rucker did not note or diagnose that the *area around* Tooth #18 was infected. In fact, Dr. Rucker testified that "the x-ray shows a cavity that is into the nerve. And also down near the bottom of the tooth." (Def. Reply, Ex. A, p. 31, ll. 15-16). He further testified that, "once the decay were all removed there would not be enough tooth above the gum to hold a filling." *Id*. (p. 31, ll. 21-23). Similarly, Plaintiff's assertion in paragraph 3 of the Statement of Genuine Disputes that S.R.'s swelling and

---

[4] In support of their informed consent argument, Plaintiffs cite portions of the Indiana Medical Malpractice Act regarding informed consent. *See* (Pl. Resp. 4-5) (citing Ind. Code §§ 34-18-12-2, 34-18-12-3, and 34-18-12-4). However, as asserted by Plaintiffs in the same brief, this matter is not governed by the Indiana Medical Malpractice Act because Dr. Rucker is not a qualified provider.

17

pain worsened after the extraction does not tend to prove causation. Summary judgment in favor of Defendant Willie J. Rucker, DDS is appropriate.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment [DE 52], and, as a result, **DENIES as moot** Defendant's Motion to Exclude [DE 50]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant Willie J. Rucker, DDS (improperly named as William J. Rucker, DDS) and against Plaintiffs Connie Reyes and Daniel Reyes, as parents of S.R., a minor child.

So ORDERED this 13th day of January, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record